##### FOR THE

## COUNTY OF WINDHAM.

### FEBRUARY TERM, 1848.

---

PRESENT,

Hon. ISAAC F. REDFIELD,  
Hon. MILO L. BENNETT,  
Hon. DANIEL KELLOGG,  } ASSISTANT JUDGES.  
Hon. HILAND HALL,

---

## THOMAS SMITH v. STEPHEN NILES.

Where the lessor of a farm for the term of three years covenanted, by his lease, to furnish ten cows, with hay sufficient to winter them, to be kept for the use and benefit of the lessee during the same term of three years, and to risk them against all unavoidable accidents, and to pay all taxes upon them, and the lessee covenanted to deliver to the lessor, at the expiration of the three years, the same ten cows, or others worth as much in all respects, with hay sufficient to winter them through, it was held, that this did not operate to pass the absolute property in the cows to the lessee, but that it was a lease, merely, with the right in the lessee, in case any of the cows were lost by accidents not unavoidable, to return other cows, of equal value.

If cattle be leased for a term of years, they cannot be attached and sold at sheriff's sale as the property of the lessor, even though the sale be with a reservation of the lessee's right to retain possession of the property during the continuance of the term.

Smith *v.* Niles.

TRESPASS ON THE CASE for taking nine cows, belonging to the plaintiff, from the possession of one William M. Brown, to whom they had been let to hire for a term of years then unexpired. The declaration contained also a count in trover. The action was tried by the court, May Term, 1846,—WILLIAMS, Ch. J., presiding,— upon a statement of facts agreed to by the parties, which was substantially as follows.

On the fifth day of March, 1842, Samuel H. Smith, 2d, leased to William M. Brown a farm for the term of three years from the first day of April, 1842; and the lease also contained this provision,— "The said Samuel H. Smith farther agrees to furnish for the said 'William M. Brown ten cows by the first day of April next, with 'sufficient hay to winter them through, to be kept by the said Wil- 'liam M. Brown on the above described premises for the use and ' benefit of the said William M. during the said term of three years. ' And the said William M. Brown, for himself, his heirs and assigns, ' agrees to deliver to the said Samuel H. Smith, his heirs, adminis- ' trators, or assigns, the same ten cows he receives of said Smith, or ' those worth as much in all respects, at the expiration of three years ' from the first day of April next, with hay sufficient to winter them ' through; said Smith is to risk said cows against all unavoidable ' accidents, and is to pay all taxes on said cows." Subsequently, and before the expiration of the three years, the cows were attached and sold at sheriff's sale as the property of the lessor, Samuel H. Smith, 2d, and the plaintiff became the purchaser,—which was the title, under which the plaintiff claimed to recover in this suit. The cows, at the time of said attachment and sale, were in the possession of Brown, the lessee by virtue of the lease, and were not moved from his possession by the officer, or the plaintiff, but remained in his possession until some time afterwards, but during the term, when the defendant, as deputy sheriff, seized them by virtue of an execution against Brown, and sold them as his absolute property. After the expiration of the lease, and before the commencement of this suit, the plaintiff demanded the cows of the defendant, and the defendant refused to deliver them.

Upon these facts the county court rendered judgment for the plaintiff for the value of the cows. Exceptions by defendant.

Smith v. Niles.

*Walker & Kellogg* for defendant.

1. By the lease the absolute property in the cows passed to Brown, and therefore the sale to the plaintiff upon the execution passed no title. *Griffith* v. *Fowler*, 18 Vt. 390. In cases of bailments on hire, where there is a power of returning other things equal in value, the property passes to the hirer, and he becomes a debtor, instead of a bailee. Jones on Bail. 117. Story on Bail. 285. *Hurd* v. *West*, 7 Cow. 752. This case is clearly distinguishable from the cases of *West* v. *Bolton*, 4 Vt. 558; *Bigelow* v. *Huntly*, 8 Vt. 151; and *Grant* v. *King*, 14 Vt. 367. Those were all cases of conditional sale, where by the contract the property was not to vest, until payment was made.

2. But if Samuel Smith, 2d, had a reversionary interest in the cows, actually vested, and they were simply leased for years, that interest could not be sold on execution. *Hartford* v. *Jackson*, 11 N. H. 145. We suppose it to be a general rule, that nothing can be taken and sold on execution, but what is capable of *seizure* and *delivery*,—unless, indeed, by express statute. This seizure is evidently contemplated by our statute; and although all the goods and chattels of a defendant may be sold on execution, a future interest in a chattel is not a chattel. *Scott* v. *Schollay et al.*, 8 East 467. *Metcalf* v. *Scholey*, 5 B. & P. 461. *Wilkes et al.* v. *Ferris*, 5 Johns. 335. *Badlam* v. *Tucker et al.*, 1 Pick. 399. *Lyon* v. *Rood*, 12 Vt. 233. *Lane* v. *Jackson*, 5 Mass. 157. So it has been held, that goods pawned, or mortgaged, or let for years, cannot be taken in execution. 2 Bac. Ab. 352. 1 Dyer 67. 10 Vin. 560. 3 Com. Dig. 299. 1 Barkers' Sheriff 202. 2 Tidd 917. Story on Bail. 238. *Marsh* v. *Lawrence*, 4 Cow. 461. 1 Gall. 11. While the following cases show, that the interest of a person in possession of personal property, and having the right of possession for a time certain, may be sold on execution. *Van Antwerp* v. *Newman*, 2 Cow. 543. *Otis* v. *Wood*, 3 Wend. 498. *Wheeler* v. *McFarland*, 10 Ib. 322.

*A. Keyes* for plaintiff.

1. It is evident, that the cows remained the property of the lessor, unless the covenant of the lessee to return the same cows, or those worth as much, transfers the property to the lessee; but the proper-

ty cannot be transferred simply by the covenant of the lessee; some act of the lessor is necessary. The object of the covenant was, that if the lessee, through his own carelessness, should lose any of the cows, he was to return others as good. But if Brown had his election, to return the same cows, or others as good, the case does not show, that he ever made that election;—and if such right existed, it was a conditional sale, and the cows did not become the property of Brown, until the condition was complied with,—until other cows were returned, as good. *Paris* v. *Vail,* 18 Vt. 277. *Abbott* v. *Goodman,* 20 Maine 408.

2. Property leased, or pledged, may be levied upon and sold in two ways; the officer may sell the property, with an understanding with the purchaser, that the lessee is to have the use of it until the expiration of the term, or the officer may sell the whole interest, and pay, or stand liable to pay, to the lessee, or pledgee, the value of his claim upon the property. The former mode was adopted in the present case. 4 Ala. 469. 5 Ib. 233. 6 Hill 484. 5 Iredell 192. 1 Sup't. U. S. Dig. 748, 751, 752. *Moore* v. *Hitchcock,* 4 Wend. 292. *Wheeler* v. *McFarland,* 10 Wend. 322. *Thomas* v. *Thomas,* A. K. Marsh. 430. Brown attorned, after the sale, and became the tenant of the plaintiff, so far as the cows were concerned.

The opinion of the court was delivered by

BENNETT, J. It is claimed by the defendant's counsel, that by the lease between Samuel Smith, 2nd, and William M. Brown the entire and absolute property in the cows in question passed to Brown, and that the sheriff's sale to the plaintiff, consequently, upon the authority of the case of *Griffith* v. *Fowler,* 18 Vt. 390, passed no property to him. But we think it was not the intention of the parties, that the lease should have that effect. The lease says, that Samuel H. Smith is to *furnish* ten cows for Brown, to be kept upon the farm leased, for three years, *for the use and benefit of Brown.* Smith is to pay all taxes upon the cows, and to risk them against all *unavoidable* accidents. This is entirely incompatible with the idea of a sale. Though it may be laid down, as a common principle, that where there is a right of returning other things of a like kind and of equal value, in lieu of the things bailed, the bailment, in legal effect, becomes a sale, and the person receiving the property be-

comes debtor for it, instead of bailee, yet every instrument is to be taken together, and a construction to be had on the whole instrument, and such as to carry out the intention of the parties.

The provision in the lease, that at its expiration the lessee shall deliver to the lessor the *same ten cows,* or others worth as much in all respects, may well have an operation, without treating the lease of the cows as a sale. The lessee was to risk the cows, as to all accidents which might not come under the denomination of *unavoidable.* If, then, any of the cows were to die, under such circumstances as to make the loss of them that of the lessee, he had the right to supply the loss by substituting others of like value. If, however, the same cows remained upon the farm at the expiration of the lease, the property in them would be in the lessor, and he would have the right to take the possession of them; and in case of a refusal in the lessee to deliver any of them, the lessor might have an action of trover against him for them. This construction renders all the provisions in the lease operative; and no doubt it is in accordance with the interest of the parties.

The case, then, must depend upon the question, whether the cows were subject to attachment and execution as the property of the lessor. The lessee had a right to the cows, during the lease, paramount to any right of the lessor, or his creditors; and in the enjoyment of this right, they could not disturb him with impunity. They could not take them out of his possession. It is no good reason to assign, why they should take them, that the lessee may have his action against the wrong doer. This, in many cases, would be equivalent to a denial of all right. If, then, the sheriff would be a trespasser against the lessee, in taking the property from his possession, can he levy upon it and sell the reversionary interest of the lessor in it, during the lease? Where property has been pawned, as security for a specific debt, it is said the creditors may tender to the pawnee the amount of the debt, and then proceed to attach the property, as belonging to the pawnor, though the pawnee refuse to receive it. This probably is so. The tender, when legally made, is, so far as the pawn is concerned, equivalent to payment. The right of the pawnee to the thing pawned is thereby determined, and after that he holds it as a wrong doer. 2 Kent. 579. 2 Ld. Raym. 916, 917.

But the present is altogether a different case. The lessee had a property in the cows for a definite time, and for his own beneficial use. The lessor could not put an end to his right, until the time had expired; and in a note to a case cited in 1 Dyer 67, it is said, that if beasts be let for years, they cannot be taken in execution for a debt of the lessor. Broke, p. 107, is cited to sustain the proposition. So in *Badlam* v. *Tucker*, 1 Pick. 398, it was held, that personal property mortgaged could not, while the debt remained unpaid, be taken in execution. The bailee of property is liable to the bailor for the use of it, although it be taken out of his possession by the creditors of the bailor, upon legal process against him. *Hartford* v. *Jackson*, 11 N. H. 145. This is upon the ground, that the property could not be attached, and that the bailee had his remedy against the officer, and consequently is liable for its use.

It is said in argument, that the cows might be sold, subject to the rights of the bailee, though neither the officer, nor the purchaser at the sheriff's sale, could take them out of the possession of the bailee, until his lease was determined. But we think not. The officer must have the right to seize and hold the possession of the cows. The very idea of an attachment, or levy, implies all this. If he cannot do this, how is the attachment, or sale on execution, to be carried out? If he were bound, after the levy, to let them remain with the bailee, he could not be held responsible for them. The bailee cannot be liable to the officer for the cows, as a *quasi* receiptor. If the residuary interest of the bailor in the cows be liable, during the leasee to be taken and sold on a single execution, it must be exposed to be taken in executions successively, and how could such a doctrine be carried out?

In this state, as well as in Massachusetts, it has been held, that if one officer attach property and take the actual possession of it, another officer cannot attach the same property, while it remains in the possession of the first attaching officer. The reason is, the second attaching officer can have no control over it. It seems, from the authorities, that the interest, which the lessee had in these very cows, might have been taken and sold on execution by his creditors; and the purchaser's right at the sheriff's sale would continue, until the determination of the lease. *Gordon* v. *Harper*, 7 T. R. 11. *Wand* v. *Macauley*, 4 T. R. 489. *Van Antwerp* v. *Newman*, 2 Cow.

544. This is entirely inconsistent with the idea, that the cows could be sold absolutely, as the property of the lessor; and we think the authorities, to which we have been referred by counsel, as well as the reason of the thing, abundantly establish the proposition, that his reversionary interest could not be the subject of sale on execution, during the continuance of the lease.

In the state of New York, they have found it expedient to provide for the sale of the lessor's interest by statute. 6 Hill 484. Perhaps it might, under our law, be reached by the trustee process, as was intimated that it might be in New Hampshire, in the case of *Hartford v. Jackson*, 11 N. H. 145.

The result is, we think the present plaintiff has acquired no rights, under the sale, to the cows in question. The defendant doubtless had the right to sell such interest, as the lessee had in. the cows; and though he sold them as the absolute property of the lessee, yet probably it would not impair the reversionary interest of the lessor, or give him a right of action. *Griffith* v. *Fowler*, 18 Vt. 390. *Van Antwerp* v. *Newman*, 2 Cow. 543. The judgment of the county court must be reversed, and judgment, on the case agreed, for the defendant.