Downer *v.* Rowell.

---

SOLOMON DOWNER *v.* CHRISTOPHER C. ROWELL.

The plaintiff delivered to the defendant certain sheep, and the defendant executed a receipt therefor, in which he agreed to keep the sheep, or cause them to be kept, " the full term of three years, and return the same, or others in their place as good as they are." *Held,* that this was not a sale of the sheep to the defendant, nor a bailment with power to sell, but that it was a bailment of the property for a certain period, with a stipulation for its return at the expiration of the bailment; and that the property in the sheep would not vest in the bailee, until he had performed his part of the agreement by returning to the plaintiff other sheep of equal quality; and that, for a conversion of the sheep, the plaintiff could sustain an action of trover.

TROVER for one hundred and eleven sheep and five hundred pounds of wool. The action was originally brought against Rowell and one Jabesh Hunter, who deceased during its pendency. Plea, the general issue, and trial by jury, May Term, 1848,—REDFIELD, J., presiding.

On trial the plaintiff gave in evidence a receipt, signed by the defendants, dated November 1, 1840, which was in these words,— " Received this day of Solomon Downer one hundred and eleven " sheep, which are about an average flock with flocks in general, " they being the best sheep in the flock which the said Downer " bought of Bani Udall except sixteen fat wethers and nine lambs; " said sheep we agree to keep, or cause to be kept, the full term of " three years, and return the same, or others in their place as good " as they are, to the said Downer;—said sheep to be delivered at " the expiration of the three years, on the premises where we now " live. We also agree to deliver to the said Downer fifty five and " one half pounds of wool, on said premises, in the month of June

" next, and also the same quantity in June, 1842 and 1843; said " wool to be good merchantable fleece wool, such as may be the " product of said above mentioned flock of sheep.    There is not to " be delivered but five lambs with said sheep to the said Downer." It was conceded, that on the day of the date of the writ in this suit, and before service, the plaintiff demanded of the defendants the sheep and wool, which by the contract belonged to him, and that the defendants did not deliver either.   The plaintiff also proved the value of the sheep and wool specified in the contract.

The defendants gave evidence tending to prove, that the wool for the first year had been paid to the plaintiff, at the time it became due, and that they delivered to the plaintiff, in the course of the summer or autumn of 1841, all the sheep which they then had, and, among them, most or all of the sheep which they received from the plaintiff. The plaintiff then gave evidence tending to prove, that he paid the defendants, in money, at the time of delivery, for all the sheep he received from them, and that he did not receive from them any of the same sheep specified in the above contract.

Upon this evidence the court decided, " as matter of law," that the plaintiff was not entitled to recover, and directed the jury to return a verdict for the defendants.   Exceptions by plaintiff.

*Tracy & Converse* and *W. C. French* for plaintiff.

At the time the defendants received the sheep, the *title to* them was in the plaintiff, and the contract shows, that the title was to remain in him ; the defendants were to keep the same sheep the full term of three years, and *yearly* deliver to the plaintiff a stated portion of their product.   It was not the intent of the parties, that the plaintiff should part with his general property in the sheep, until the defendants had returned other sheep in their place.   The mere fact, that the receipt is in the *alternative*, to return these sheep or others as good, does not pass the title in these sheep to the defendants. *Sibley* v. *Storrs*, 8 Vt. 15.   *Smith* v. *Niles*, 20 Vt. 315.   The returning of other sheep, by the terms of the contract, was a *condition precedent*, which must have been performed, before the general title in those sheep would pass to the defendant.   In this state the doctrine of conditional sales has been carried much farther, than by the courts of some of the neighboring states.   See Minot's Dig. 626 ;

Downer *v.* Rowell.

*Hussey* v. *Thornton,* 4 Mass. 405; *Marston* v. *Baldwin,* 17 Mass. 406; *Haggarty* v. *Palmer,* 6 Johns. Ch. R. 437; *Russell* v. *Minor,* 22 Wend. 661. We think this case much stronger, than many of the cases of conditional sales, which have been sustained in this state. See *Grant* v. *King et al.,* 14 Vt. 367; *Bradley* v. *Arnold,* 16 Vt. 382.

*J. Barrett* for defendant.

We assent to the law of the cases touching the rights and liabilities of parties to *conditional sales,*—as *West* v. *Bolton,* 4 Vt. 558, and *Bigelow* v. *Huntley,* 8 Vt. 151; and of the cases of *bailments* with terms of sale superadded,—as *Grant* v. *King et al.,* 14 Vt. 367, and *Bradley* v. *Arnold,* 16 Vt. 382; and of cases of bailment of chattels for a *specific time and purpose,* where the bailee, within the time, puts the thing to a different use from that for which it was bailed,—as *Swift* v. *Moseley et al.,* 10 Vt. 208.

To sustain trover, the plaintiff must have the right to some identical or specific goods. 1 Chit. Pl. 147. The receipt does not give the plaintiff any title, or interest, in any specific wool, but contains only an independent agreement to deliver a certain quantity and quality of wool, without defining what particular wool.

The contract does not hold the defendants accountable for the *same sheep,* but only for the *same number* of sheep; at the end of the three years any other sheep would have answered the contract, even if the defendants at the same time had the receipted sheep in their own possession. The agreement to keep the sheep for three years had reference merely to the time, for which the contract was to run, and not to the *identity* of the sheep. It was not designed to oblige the defendants to keep the same or any other sheep;—this is evident from the fact, that the contract provides for the return of others; and hence the contract contains no provision as to the *manner* of keeping the sheep, nor as to their increase. The cases decided in this state differ in essential features from this; there is, in all of them, an express reservation of title, or manifest intention to retain title, as security for fulfilment on the part of the defendant. The case of *Hurd* v. *West,* 7 Cow. 752, is directly in point. So, also, Jones on Bail. 102, Ed. of 1796, p. 142; 2 Kent, 4th Ed., 589; Story on Bail., 3d Ed., 440; *Holbrook* v. *Armstrong,* 10 Maine 31; 3 Mason 478; 21 Wend. 85.

The case shows no *actual* conversion. Upon the ground assumed by the plaintiff, he should have shown *actual* conversion of the *sheep*, within the three years, or a demand, at the end of that time, at the place specified, and refusal to deliver,—and, as to the wool, actual conversion of the respective annual amounts to be paid, before the time of payment, or demand at the time and place specified and refusal to deliver.

The demand was insufficient; the property should have been *specified*, and, not having been so, the neglect to deliver any sheep, or wool, was no evidence of conversion.

The opinion of the court was delivered by

KELLOGG, J. This is an action of trover for certain sheep and wool. The plaintiff, to prove his title to the property, gave in evidence a receipt executed by the defendants to the plaintiff, and also evidence of a demand of the defendants for the property and of their failure to deliver the same. Upon the evidence, the court below decided, *as matter of law*, that the plaintiff was not entitled to recover; and the correctness of that decision is now the subject of enquiry.

Whether the decision of the county court is sustained, or not, must depend upon the construction, that is given to the receipt, or contract, referred to in the bill of exceptions. If it is to be construed as a sale of the property to the defendants, or even a bailment with the power to sell the same, (and such the defendants insist is the legal effect of the contract,) then the decision of the county court was undoubtedly correct.

It is a well settled rule in the interpretation of contracts, that the *intention* of the parties shall prevail and be carried into effect, provided it can be done consistently with the rules of law. Hence the inquiry arises, was it the intention of the parties, that the plaintiff, by the contract, should be divested of the ownership of the property, and the same be vested in the defendants? Or was it a bailment of the property for a certain period, with a stipulation for its return at the expiration of the bailment? We are inclined to think, that the latter was intended by the parties, and that this is apparent upon the face of the contract. The defendants, in express terms, agree to keep the sheep for the period of three years; which is inconsist-

Downer *v.* Rowell.

ent with the idea of an absolute sale of the property. If the parties had intended a sale, we can hardly believe, they would have inserted such a stipulation in the contract. The plaintiff could have had no motive for requiring it, and the defendants would not have been likely to have submitted to it.

But it is said, that by the contract the defendants were allowed " to return the same sheep, *or others* in their place as good as they were ;" and this has been urged as giving the defendants an unqualified right to dispose of the same. But the fact, that the obligation of the defendants in relation to the return of the sheep is in the alternative, does not necessarily determine the character of the contract and convert it into a contract of sale. Such a contract is not inconsistent with the continued ownership of the property by the plaintiff. It was so held in *Smith* v. *Niles,* 20 Vt. 315. That was a lease of cows for three years, with a stipulation by the lessee to return the same cows, *or those worth as much,* and it was held not to be be a sale of the cows, or to give the bailee a right to sell ; that it was simply a provision, in the event that any of the cows were lost under such circumstances, as to render the bailee liable, that he might replace them with other cows of equal value. So in the case of *Grant* v. *King et al.,* 14 Vt. 367, it was held, that where cattle were leased, with a provision in the contract, that the lessee should return the cattle at the expiration of the term, *or pay a certain sum in lieu thereof,* it did not amount to a sale of the property. These decisions are founded upon the supposition, that the parties, by the terms of the contracts, *intended* a bailment and not a sale.

We are aware, that the case of *Hurd* v. *West,* 7 Cow. 752, cited at the argument, is opposed to the view, which we take of the case before us. There the court seem to consider, that the alternative words in the contract determine its character,—that the right of the party to return other sheep of equal value makes the contract operate as a sale,—that such is the legal effect of the contract, and that upon the delivery of the property it vests in the bailee, or vendee. This decision is admitted to be in direct conflict with the case of *Seymour* v. *Brown,* 19 Johns. 44,—which last case is said to be overruled. Which of the two cases is the better law, I do not deem it necessary to inquire, as I think the case at bar must be

controlled by the decisions of our own court.  It is analogous to the case of *Smith* v. *Niles,* and I think, in principle, cannot be distinguished from it.

It may be asked, if the property at the time of the bailment does not pass, when does it vest in the bailee?  We answer, *certainly not until* the bailee performs his part of the contract, by returning other sheep of equal goodness.  That sufficiently secures to the bailor a return of the property bailed, and affords to the bailee all that he could claim, upon the most liberal construction of the contract.  This construction of the contract is most beneficial to the defendant, and carries into effect, we think, the obvious intention of the parties.

Judgment of the county court reversed.