NATHANIEL HEACOCK

*against*

SAMUEL WALKER.

A person loaning a horse, which is eloigned and sold by the borrower, has a right to recapture him, provided it be done without breach of the peace.

THE nature of this cause, the evidence, and the opinion of the Court, may be amply collected from the charge to the Petit Jury, delivered by the Chief Judge:

Gentlemen of the Jury,

THE plaintiff demands of the defendant a sum in damages for having, as he alleges in his declaration, on the 26th day of *March*, 1799, with force and arms, at *Charlotte*, in this County, took from his possession a certain gelding horse, the plaintiff's property, of the value of 100 dollars.

To this declaration the defendant hath pleaded that he is not guilty. The issue hath been joined, and you are to find by your verdict, founded on the law and the evidence you have heard, whether he is or is not guilty.

If you find that he is guilty, you will by your verdict, assess a sum in damages commensurate with the injury the plaintiff hath sustained, which must be measured by the value of the horse at the day of the trespass of which you have had proof, with the legal interest to the present time.

The evidence in the case, as collected from the testimony of numerous witnesses, shews in substance,

That the property of the horse, in the month of *January*, 1799, was in the defendant *Walker* by *bona*

*fide* purchase from one *Elisha Sadd.* That soon after the defendant, who then lived in *Pittsford*, in the County of *Rutland*, loaned the horse to one *Aaron Heacock*, to go a journey into the northern part of this State. On his journey, *Aaron Heacock* purchased from the plaintiff a load of tin ware upon a short credit, and proceeded with the horse and ware towards *Pem*, in the State of *New-York*, at which place he engaged to vend the ware, and with the avails of the sales to return and pay the plaintiff. But it seems he went into the Province of *Lower Canada*, where he disposed of his merchandise. The plaintiff having waited a reasonable time, and suspecting the honesty of *Aaron Heacock*, sent his son *Ambrose* in pursuit of him, who overtook him in the village of *La Prairie*, where he sold and delivered the horse to the plaintiff, through the agency of his son, in part payment for the tin ware, who brought the horse to his father, the plaintiff, who had him in possession some weeks. On the day preceding that of the trespass alleged, the defendant came to a tavern in *Charlotte*, under pretence of purchasing a horse to ride to *Canada*. The plaintiff was sent for, and the parties had in appearance nearly completed a contract for the purchase of the horse; but the business was deferred until the next day. Early in the morning, before the plaintiff had arisen, the defendant went to his stable, and persuaded his son *Ambrose* to bring the horse into the highway. The defendant then put his own bridle and saddle upon him, mounted the horse, and, as he rode off with him, proclaimed that he took the horse as his own property.

Heacock
v.
Walker.

Upon the law arising from these facts, which the Court will deliver to you, you will find your verdict.

In order to maintain trespass for a chattel, the plaintiff must shew that the property was in him at the time of the taking; you have therefore to inquire, whose was the property of this horse on the 26th of *March*, 1799.

We learn from the witnesses, that in the month of *January* preceding, the property was incontestibly in the defendant by *bona fide* purchase.

No person in a legal view can be divested of his property except by his own contract, or the operation of law.

Here it is apparent the defendant hath not parted with his right by contract. Has he been divested of it by operation of law? Was his loaning this horse to *Aaron Heacock* putting his property in such a situation as would render a sale by the borrower operative against him? For it is true the legal owner of property may place it in such a situation as that he may be divested of it legally without his consent. As where a person acquires a right to a chattel by fair purchase, and leaves it in the possession of the vendor, a subsequent sale by the vendor will enure in favour of a second purchaser, if he is ignorant of the first transfer.

But had the defendant, by his loan to *Aaron Heacock*, thus exposed his property?

The plaintiff contends that he has; for he says he purchased this horse in open market. He has cited several cases from the *English* books to shew, that the sale of property thus purchased shall be valid against the owner.

One case cited is of property purchased in a shop in the city of *London*; but this appears to have resulted from the custom of that city, and custom only protects the sale of such property as by prescriptive right has been vended in such shop.

The other cases are of goods vended at certain fairs or statute markets; but it appears that these fairs and markets are held on stated days, that there are known officers attached to them, in whose books entries are made of the property exposed to sale. Thus from their very nature they become places where those who have lost property will naturally resort to find it; and if they neglect, there seems some shew of reason why they should not afterwards claim it from an honest purchaser.

But in this State we have no such city customs; no prescriptive rights to vend particular articles in particular places; no fairs or statute markets.

The only cases of sale which can with propriety be said to be made in *overt market* with us, are sales made under the probate act upon writs of execution, and of goods found, or estrays, which being regulated by statute, public advertisement made, and the sale effected by the known officers of government, or under the express provisions of the laws, ought to enure against the owner.

What sales shall be considered to have been made in market overt.

But it is observable, the purchase by the plaintiff was made in a foreign dominion, and the question will arise, whether a chattel, eloigned from an inhabitant by an inhabitant, and then sold to a third inhabitant of this State in a foreign dominion, shall vest the property in the purchaser. The Court consider it would not.

Heacock
v.
Walker.

The principle of law is, that he who loans property, which is eloigned by the borrower and sold to a third person, is not by the sale divested of his interest in the property.

The converse doctrine would tend to abridge that friendly intercourse among men which ameliorates society; for if the law is, that a man must consider, that every time he loans his horse to a poor neighbour to go to the mill, or to call aid to his wife in the hour of nature's difficulty, that he risks the sale of the property by the borrower, you will consider how far this will tend to restrain those acts of neighbourly kindness, which, when exercised by the opulent towards the poor, assume a portion of that charity which is the ornament of christian and social life.

A person may recapture his property in such manner as may constitute a trespass.

The only question then remaining in this cause for your consideration is, whether the defendant in this case took his own property under such circumstances as constitute a trespass.

To recapture property of which a person hath been unlawfully deprived, is a natural right, sanctioned by the laws; but he must retake his property without breach of the peace, " for the public peace is a superior consideration to any man's property." If I find my horse in a public place, I may lawfully seize him, but I cannot justify the breaking the close of another to take him. If, therefore, the Jury find that there has been any breach of the peace in the mode of recapturing a man's property, they will give damages for the trespass *alone*, that is, for the injury done by the act of taking unlawfully, but not for the value of the property taken. In this case there does

not appear to have been any breach of the peace in the defendant.

The plaintiff's counsel represent this as a hard case on the side of their client.

Here are two honest men, one of whom is to suffer a loss, and you are to judge who shall sustain it. He who merely loaned his horse to a neighbour to perform a journey, or he who purchased the property of the borrower. The law bids the purchaser in such case to beware. *Caveat emptor,* look to it, buyer, that he from whom you purchase has a right to sell.

It is also said, that if the loaner of property is thus protected, it will open a door to imposition and fraud; that the owner may procure some person to vend his property, then recapture it, and share the gains with the supposed borrower.

If the least collusion between the defendant and *Aaron Heacock* had been shewn in this cause, the Court would have directed you to find not merely retributive but exemplary damages for the plaintiff.

As the case now is, we consider the cause clearly with the defendant.

Verdict for the defendant—His costs.

*W. C. Harrington* and *Amos Marsh,* for plaintiff.
*Daniel Chipman,* for defendant.