### Stephen W. Griffith v. Joseph Fowler.

The purchaser of goods, or chattels, at sheriff's sale acquires no greater title to them, than that of the execution debtor, as whose they are sold.

The English doctrine, as to the effect of a sale in *market overt*, in passing the title to the property, is not applicable to any sales in this State.

Trespass for taking a shearing machine. The case was submitted upon a statement of facts, agreed to by the parties, from which it appeared, that in 1836 the defendant, being the owner of the machine in question, lent it to one Freeman, to use in his business as a clothier, who was to pay a yearly rent therefor, and in whose possession it remained until the year 1841, when it was sold at sheriff's sale, on execution, as the property of Freeman, and one Richmond became the purchaser; that Richmond, in January, 1842, sold the machine to the plaintiff, who at the same time purchased of Freeman the building, in which the machine was situated, and took possession thereof; and that the defendant, in February, 1842, took the machine from the plaintiff's possession, claiming it as his property. The value of the machine was admitted *to be fifty dollars.*

Upon these facts the county court,—Hebard, J., presiding,—rendered judgment for the defendant. Exceptions by plaintiff.

*Tracy & Converse* for plaintiff.

This case presents the question, whether a purchaser of personal property at a regular sheriff's sale is protected in his title to the property, without reference to the fact who was the former owner. It is believed, that this question was early decided in this State in favor of the right of the purchaser. *Heacock* v. *Walker*, 1 Tyl-338. Williams, Ch. J., in *Austin* v. *Tilden et al.*, 14 Vt. 325, 327. And the same has been often intimated from the bench. Paddock, J., in *Bates* v. *Carter*, 5 Vt. 609. Redfield, J., in *Gates* v. *Gaines*, 10 Vt. 351. Such seems, also, to be the opinion of the court in Massachusetts; although no case is found directly presenting the question. Parker, Ch. J., in *Howe* v. *Starkweather*, 17 Mass. 240. The owner of property, which is sold on an execu-

Griffith v. Fowler.

tion against a third person, is by no means without remedy. He has his right of action against the sheriff, and all who are concerned in the taking, or sale ; or he may repossess himself of the property by replevin. And if he will lie by, and suffer his property to be thus sold, he should be compelled to look, for indemnity, to the persons who took it, and not be allowed to recover it of an innocent purchaser. Such, also, should be the rule, for the reason that it would be likely to avoid a multiplicity of suits and prevent cost.

We are aware, that there are *dicta* of judges in New York, inclining to an opposite opinion; but it is believed, that there has been no adjudged case by the courts in that state directly upon that question. 1 Johns. 470. 6 Johns. 44.

The doctrine established in this state, upon the sale of an entire chattel, owned by tenants in common, upon an execution against one of the tenants, seems to establish the position for which we contend. *Ladd* v. *Hill*, 4 Vt. 164. *Bradley* v. *Arnold*, 16 Vt. 382. Whereas a sale of the entire article by one tenant in common will not lay the foundation for an action of trover, as it conveys only the interest of the seller. *Tubbs* v. *Richardson*, 6 Vt. 442. *Welsh* v. *Clark*, 12 Vt. 681. *Sanborn* v. *Morrill*, 15 Vt. 700.

*J. S. Marcy* for defendant.

Sheriff's sales have not been deemed equivalent, in England, to sales in *market overt*. To render them analogous to such sales, they should be subjected to the same regulations and restrictions. No interests, existing in this country, require such a sacrifice of the rights and interests of the owners of property, as must be incurred, if the effect is given to sheriff's sales, which is claimed by the plaintiff, or which attend sales made strictly in *market overt*. This proposition is sustained by the fact, that the English law, applicable to sales in *market overt*, has never been adopted in this country. 2 Kent 324. And if it is inexpedient to adopt such sales, and their consequences, it naturally follows, that it would be impolitic to give to sheriffs' sales the same effect. The case in 1 Tyler, 338, does not involve any question connected with the law of *markets overt*, or sheriffs' sales.

Griffith *v.* Fowler.

The opinion of the court was delivered by

REDFIELD, J. The only question reserved in this case is, whether a title to personal property, acquired by purchase at sheriff's sale, is absolute and indefeasible against all the world, or whether such sale only conveys the title of the debtor.

There has long been an opinion, very general, I think, in this state, not only among the profession, but the people, that a purchaser at sheriff's sale acquires a good title, without reference to that of the debtor, that such a sale, like one in *market overt* in England, conveys an absolute title. But, upon examination, I am satisfied that this opinion acts upon no good basis.

So far as can now be ascertained, this opinion, in this state, rests mainly upon a *dictum* in the case of *Heacock* v. *Walker*, 1 Tyl. 338. There are many reasons, why this *dictum* should not be regarded, if the matter were strictly *res integra*. It was a declaration of the chief justice in charging the jury. Cases were then tried by the jury at the bar of this court, as matter of right, and in course, and before the law of the case had been discussed and settled by the court. In all these respects these trials differed essentially from jury trials at the bar of the higher courts in Westminster Hall. Such trials, there, being only matter of favor, granted in the most important cases, and after the law of the cases has been fully discussed, and settled by the court.

The law given to the jury, in the two cases, will of course partake something of the character of the respective form and deliberation of the trials. Under our former practice, law laid down in the course of a jury trial, unless when questions were reserved and farther discussed upon motions for new trials, was not much esteemed, even when it was upon the very point in dispute. But especially, the *dicta* of the judge, who tried the case, and who must, of necessity, somewhat amplify the bare text of the law, in order to show the jury the reason upon which it was based, could not be esteemed, as any thing more than the hastily formed opinion of the judge—mere argument, to satisfy some possible, or apprehended, doubt of the jury in regard to the soundness of the main proposition laid down. Such was the *dictum* referred to. That, which was said of Chief Justice Tilghman, of Pennsylvania, is undoubtedly good praise, when said of any judge;—" He made no *dicta*, and he

Griffith *v.* Fowler.

regarded none." There are sufficient reasons, why the *dictum* should not be regarded, if the thing were new. And we do not esteem the long standing of the *dictum* of any importance, unless it can be shown, that it has thus grown into a generally received and established law, or usage; which, we think, is not the case in regard to this. For this court has, within the last ten years, repeatedly held, that a sheriff's sale was of no validity to pass any but the title of the debtor, *when no actual delivery of the thing sold was made by the sheriff, at the time of sale.* Austin v. Tilden et al., 14 Vt. 325. *Boynton* v. *Kelsey*, Caledonia County, 1836. *S. P.*, Lamoille County, 1841. Since the first of these cases was decided, the main question, involved in this case, has been considered doubtful in this state, and we now feel at liberty to decide it, as we think the law should be, that is, as it is settled at common law.

But the idea, that some analogy existed between a sheriff's sale and a sale in *market overt* is certainly not peculiar to the late Chief Justice Tyler. This opinion seems at one time to have prevailed in Westminster Hall, to some extent, at least; for in the case of *Farrant* v. *Thompson*, 5 B. & A. 826, [7 E. C. L. 272,] which was decided in the King's Bench in 1822, nearly twenty years later than that of *Heacock* v. *Walker*, one of the points raised in the trial of the case before Chief Justice Abbott was, that the title of the purchaser, being acquired at sheriff's sale, was good against all the world, *the same as that of a purchaser in market overt.* This point was overruled, and a verdict passed for the plaintiff, but with leave to move to set it aside, and to enter a nonsuit, upon this same ground, with one other. This point was expressly argued by Sir James Scarlet,—who was certainly one of the most eminent counsel, and one of the most discriminating men of modern times,—in the King's Bench, and was decided by the court not to be well taken. Since that time I do not find, that the question has been raised there.

It seems to be considered in Massachusetts, and in New York, and in many of the other states, that nothing, analogous to *markets overt* in England, exists in this country. *Dame* v. *Baldwin*, 8 Mass. 518. *Wheelwright* v. *DePeyster*, 1 Johns. 480. 2 Kent 324, and cases there cited. Nothing of that kind, surely, exists in this state, unless it be a sheriff's sale. And if the practice of holding sales in *market overt* conclusive upon the title existed in any of the states,

it would be readily known. I conclude, therefore, that Chancellor Kent is well founded in his opinion, when he affirms, that the law of *markets overt* does not exist in this country. Ib.

It seems probable to me, that the idea of the conclusiveness of a sheriff's sale upon the title is derived from the effect of sales under condemnations in the exchequer, for violations of the excise or revenue laws, and sales in prize cases, in the Admiralty courts, either provisionally, or after condemnation. But these cases bear but a slight analogy to sheriff's sales in this country, or in England. Those sales are strictly judicial, and are merely carrying into specific execution a decree of the court *in rem*, which, by universal consent, binds the whole world.

Something very similar to this exists, in practice, in those countries, which are governed by the civil law; which is the fact in one of the American states, and in the provinces of Canada, and in most, if not all, the continental states of Europe. The property, or what is claimed to be the property, of the debtor is seized and libelled for sale, and a general monition served, notifying all having adversary claims to interpose them before the court, by a certain day limited. In this respect the proceedings are similar to proceedings in prize courts, and in all other courts proceeding *in rem*. If no claim is interposed, the property is condemned, by default, and sold; if such claims are made, they are contested, and settled by the judgment of the court, and the rights of property in the thing are thus conclusively settled *before the sale*.

But with us nothing of this character exists in regard to sheriff's sales. Even the right to summon a jury to inquire into conflicting claims *de bene esse*, as it is called in England, and in the American states, where it exists, has never been resorted to in this state. And in England, where such a proceeding is common,—Impey 153; Dalton 146; *Farr et al.* v. *Newman et al.*, 4 T. R. 621,—it does not avail the sheriff, even, except to excuse him from exemplary damages. *Latkow* v. *Eamer*, 2 H. Bl. 437. *Glassop* v. *Poole*, 3 M. & S. 175. It is plain, then, that a sheriff's sale is not a judicial sale. If it were, no action could be brought against the sheriff, for selling upon execution property not belonging to the debtor.

With us an execution is defined to be the putting one in possession of that, which he has already acquired by judgment of law.

Co. Lit. 154 *a.* (Thomas' Ed. 405.) But the judgment is of a sum *in gross* " to be levied of the goods and chattels of the debtor," which the sheriff is to find *at his peril.* The sale upon the execution is only a transfer, by operation of law, of what the debtor might himself transfer. It is a principle of the law of property, as old as the Institutes of Justinian, *Ut nemo plus juris in alium transferre potest, quam ipse habet.*

The comparison of sheriff's sales to the sale of goods lost, or estrays, in pursuance of statutory provisions, which exist in many of the states, does not, in my opinion, at all hold good. Those sales undoubtedly transfer the title to the thing, as against all claims of antecedent property in any one, if the statutory provisions are strictly complied with; but that is in the nature of a forfeiture, and is strictly a proceeding *in rem,* wherein the finder of the lost goods is constituted the *tribunal of condemnation.*

There being, then, no ground, upon which we think we shall be justified in giving to a sheriff's sale the effect to convey to the purchaser any greater title, than that of the debtor, the judgment of the court below is affirmed.