## True *v.* Congdon.

Any sale, contract or arrangement, entered into with the intent to hinder, delay or defraud creditors, will be void as to such creditors. But if the sale, contract or arrangement is made *bonâ fide*, and without any such fraudulent intent, it will be valid, though its effect may be thus to hinder or delay creditors.

In case of an assignment for the benefit of creditors, if the trust be accepted by the assignee, upon condition that he shall be responsible only for his actual receipts and willful defaults, the assignment will be void under our statute, in the same way it would be if it were not an assignment of all the debtor's property (but what the statute excepts) for the benefit of all his creditors, or if it were not sworn to, as required by law.

When an officer sells the entire property in a personal chattel, on execution, the purchaser will hold such property, provided the attaching creditor could do so, as the purchaser will, in that case, stand in the place of such creditor, having all his rights. But if the officer sell only the debtor's right to or interest in the property, then the purchaser will stand in the place of the debtor, and have only his rights, and not the rights which that debtor's creditors might have.

In all actions of tort brought by one only of two or more joint tenants, parceners, tenants in common, partners, executors, assignees in bankruptcy, and others, who regularly ought to join as plaintiffs, the non-joinder can only be taken advantage of by plea in abatement, or by way of apportionment of damages on the trial, though it is otherwise in actions in form *ex contractu.*

Trespass, for taking and carrying away a quantity of spruce and pine boards, plank, timber, and shingles, on the 30th day of April, 1858.

Plea, the general issue, and a brief statement that the defendant bought the lumber in question at an auction sale of the same, on execution against one Charles Bailey.

It appeared in evidence that on the 29th day of January, 1855, the said Charles Bailey and one Roberts were engaged in the lumber business at Guildhall, Vt., under the firm of Bailey & Roberts, where they occupied a saw mill and machinery in the manufacturing of various kinds of lumber and in making sugar boxes; that Charles Bailey lived at Canaan, Vt., forty miles above Guildhall, and the said Roberts lived at Guildhall, and had the charge of the mill; that there was lumber, both manufactured and unmanufactured, at and about said mill, belonging to the said Bailey & Roberts; that the said Charles Bailey had a large amount of spruce and pine timber in his own right, in the Connecticut River, and on its banks between McIndoe's Falls and the head of Hall's Stream, so called, being the most of it above said Guildhall, and had been drawn in during that winter upon contracts, some of which contracts were not fully completed on said 29th day of January; that on said day the said Bailey executed the assignment hereto annexed, in the manner in which it purports to be executed.

The said Roberts was not present, but afterward assented to it and acted in accordance with it. The said John Bailey was not present, and none of the property involved in this suit was claimed or assigned as his. The interest of said Roberts was in one half of the profits, but nothing in the capital stock.

On the day of the assignment the plaintiff went to the mill at Guildhall and took possession of the lumber, notifying the foreman at the mill of the assignment, and marked or caused the lumber to

be marked " T. & W.," and made an arrangement with the foreman to hold the possession and act for him thereafter. The trustee, Williams, with True, opened their books and marked some logs, and very soon Williams declined altogether having any thing to do with it.

Bailey, soon after the assignment, and before much if any work was done manufacturing lumber (the mill having stopped a day or two), saw the plaintiff, and said to him that the property assigned would more than pay the debts, and being anxious to have the lumber carefully and economically manufactured, desired the plaintiff to make some arrangement with him by which he might move to Guildhall and look after it; the plaintiff was a merchant, doing business at North Stratford, fourteen miles away; whereupon the plaintiff made an arrangement with Bailey to move his family to Guildhall. He was to look after the hands, keep their time and board them, and look after the manufacturing of the lumber. The plaintiff was to furnish supplies to board the help with, and the said Bailey and his wife were to live out of them. Bailey was to give the use of the mill, of which he had a lease, and his own services, and make no charge to the assignment, or the plaintiff therefor, or for the boarding of the help; but the same were to go in for the benefit of the assignment. In accordance therewith, Bailey moved to Guildhall and acted there as the agent of the plaintiff as above; the plaintiff selling most of the lumber sold, and taking the pay therefor himself, being there frequently to look after the business.

True testified that at the time of the execution of the deed of assignment, he had no knowledge of Bailey's contracts to put more lumber into the river, or to have more delivered beside that hauled out at that time; and that Bailey soon after came to him and informed him that he had various contracts of this nature with people on Hall's Stream, at Pittsburgh, Bloomfield, Columbia, &c., and that he was under obligation by contracts to take such lumber as they could get out during the winter, and insisted that True should furnish means to carry out such contracts. He says, I assented to this proposition, and verbally agreed to receive the timber, and that the same should go into the assignment, and be dealt with and disposed of the same as the assigned lumber and timber, and that the bills paid out by me should all be first paid, and the balance, after deducting my advances, expenses, and something for my time, should go for the benefit of the creditors in the assignment, and the overplus, if any, to Bailey or Bailey & Roberts, the same as the assigned property. There was to be no separation; every thing should go into the assignment with the other lumber in the assignment; but I was to hold on to the lumber as security, and the business to be done in my name alone. Accordingly Bailey went on, other lumber was brought into the concern, commingled together, manufactured together, sold together, without any regard, whether it was cut or hauled out before or after the said 29th day of January, 1855. There was no inventory of the lumber taken, as contained in the assignment, nor of the new lumber afterward introduced, no distinctive mark placed on any of it, except a part

of the logs at the Guildhall mills, marked "T. W." It appeared that much of the lumber was manufactured into sugar boxes and sent to Portland market. The boxes were marked in True's name.

It also appeared that some new pine lumber was purchased by Bailey of Messrs. Washburns, with the plaintiff's consent, that had not been bargained for prior to the assignment, the plaintiff paying principally therefor in money and goods from his store; the balance not paid by the plaintiff remaining still due.

A part of this lumber was manufactured into a large boat for freighting lumber, 65 feet long and 13 feet wide. Other portions of this lumber was worked up into sugar boxes, it being suggested that it was wide lumber, and could be profitably employed to help sell the rest.

In 1856, Samuel Moore sold to Bailey 30,000 of spruce lumber, taking a wagon of Bailey for payment in part, and the note of Bailey and True for the balance, $30, which was afterward paid by Bailey. This wagon was a part of the assigned property, and True testified that Bailey came to him and said that he wanted to exchange some assigned property for this lumber. This went with the other lumber. There were also 75,000 of spruce logs, purchased of Lyman Jordan, for which Bailey had advanced $25, balance of price and transportation, &c., from Columbia, settled for by the plaintiff. This $25 was paid by Bailey to the plaintiff, and credited to Bailey on his books, as he testified.

Also, a large lot of lumber, hauled out by Ezra Bigelow, of Hereford, Canada. Bigelow testified that he worked for Bailey in logging on the branches of Hall's Stream, in January, February, and March, 1855. Had part of the time two ox teams, and eight or ten hands. Most of the lumber was pine, and most of that was got down to Northumberland that spring. Bailey paid me for my labor in money. Had also a lot of land in Canada in part payment of the lumber, &c. There was also a large lot of lumber purchased of Norris & Fletcher and delivered at Pittsburg after the assignment, but contracted for by Bailey before the assignment, for which True testified he paid, and the expense of transportation.

Samuel J. Bailey testified that subsequent to the assignment he delivered several thousands of lumber, for which neither Charles Bailey or True had paid him; that this was contracted for in the fall of 1854; though Charles Bailey had paid him something toward some of the labor of the men after the assignment. True testified that it was agreed between him and Bailey, that Bailey should turn his private accounts or balances in payment for labor upon the lumber, or for lumber itself. He testified that he had credited Bailey for some payments, but that he did not know how much Bailey had paid or turned in; that he, Bailey, did more or less custom work at the Guildhall mills. Had heard that he had built a barn, and used lumber and received payment therefor; and he heard of his selling some small lots of lumber, for which he had rendered no account, and without his assent; that he had advanced money, and goods from his store, and supplies on the order of Bai-

ley, and to Bailey himself to a large amount, which were charged
in his account; that he had gone on through 1855, 1856, and into
1857, in this way, with the lumber falling in price on his hands;
sugar boxes falling from 80 cents, in 1855, to 36 cents, in 1857; that
a part of the lumber was carried off in the freshet. In the year
1857 part of the remainder had been attached by the creditors of
Bailey & Co., and the part in the river he had sold; that as assignee
he had never charged or made any account of his services, or for
expenses, or time; had never settled his accounts with Bailey; but
had advanced in money, and supplies furnished from his store, to
Bailey, and for lumber, transportation, labor and otherwise,
$6,628.18
And had received from all sources as credit,          4,647.37

Leaving a balance due the plaintiff of          $1,980.81
Had never kept any distinct account of goods, as first assigned.

It appeared in evidence that a part of the creditors of Bailey,
and Bailey & Roberts, and the other assignors, were present at its
execution, and assented thereto. Another portion of them were
not present. It did not appear that the attaching creditors, or any
other creditors of Bailey, or of Bailey & Roberts, or any party
interested in the assignment, were consulted by Bailey & True, or
either of them, upon the legality or expediency of the new verbal
contract or arrangement whereby the additional lumber was bought
and introduced into the property assigned; nor did it appear that
they had knowledge or gave consent to the arrangement made with
the Messrs. Danforths.

It also appeared that in the last of March or first of April, 1855,
the plaintiff sold out his mercantile business and goods at North
Stratford, to the Messrs. Danforths, and that in April, 1855, when
the plaintiff was running this timber down the river, he desired
goods and supplies of the Messrs. Danforths on credit, to a large
amount. The Danforths not knowing, and being fearful that there
might be something wrong or defective in the assignment, declined
to let the plaintiff have supplies, as matters then stood. Thereupon
Bailey and the plaintiff went to them, and Bailey agreed verbally
with the plaintiff that if the Danforths would let the plaintiff have
the supplies, the plaintiff should hold all this lumber which was
then in his hands, and the avails of it, when manufactured and sold,
till he got his pay for all his advances and expenses on and about
the same; when the Danforths, then and in the course of manufac-
turing and running of the lumber, furnished supplies to the amount
of some $1,500 or $1,800, for which the plaintiff has not been paid.

The defendant gave in evidence a writ in favor of Moses Rogers
against Bailey, dated February 25, 1857; also one in favor of
James C. Hall against Bailey, both returnable to the May term of
the county court for the county of Essex and State of Vermont, on
which writs the property in question was attached. Judgments were
rendered thereon at the March term of said court, 1858. The judg-
ment in Hall v. Bailey was rendered by agreement for the full
amount declared for in a general count, and for the amount of the

*ad damnum* in the writ, being $1,700. The main item in the speci-
fication was for rent of said saw mill three years, $1,500. The sales
on the execution were on the 18th of April, 1858. The returns
are in form alike on each execution. So much of the return as is
necessary to raise the question of law arising thereon, was made a
part of the case. The statutes of Vermont, authorizing sales upon
executions, were put in evidence and made a part of the case.

It also appeared that the right sold was sold for a sum much less
than the full value of the lumber.

Rogers, the judgment creditor, testified that he directed the de-
puty sheriff to attach the property; that he was present at the
sheriff's sale, and ordered the officer to sell all Bailey's right in the
property; that the plaintiff, True, was present, and claimed the
property and forbade the sale.

David H. Beattie, the sheriff who made the sale, testified that he
made the sale as he made the record in his return; that he sold
whatever interest Bailey had; that True was present and claimed
the lumber and forbade the sale; that he was asked at the sale what
Bailey's interest was, and answered that he could not tell.

True testified also that the object he had in view in taking the
assignment was to secure a debt of $250 of his own, and more
especially to secure a debt for Richey & Danforth, of about $1,000,
being a note indorsed by Bailey & Roberts, and against one Merrill,
who had failed, and which note he, True, advised Richey & Dan-
forth to buy.

The plaintiff objected to the validity of the sale, for two reasons:

1. That, by the law of Vermont, there is no provision for the sale
of any such undefined property as purports to have been sold in
this sale.

2. There never was any notice given of the sale of any such right
or property as the officer's return shows to have been sold, and the
plaintiff to have bought. The interest of Charles Bailey was never
advertised for sale. The court overruled the objections and received
the evidence, and the plaintiff excepted.

The defendant offered evidence tending to show that the contract
and course of dealing between the plaintiff and said Bailey was
fraudulent as to *bonâ fide* creditors electing to avoid the same. To
this the plaintiff objected, on the ground that the defendant did
not stand in the place of a creditor electing to avoid the contract,
but with the right of Bailey sold by a creditor that had elected to
affirm it. The court overruled the objection, the plaintiff excepting.

The plaintiff claimed and introduced evidence tending to show
that the judgment in Hall *v.* Bailey was fraudulent and collusive,
and that the suit was instigated by Bailey himself, without the
knowledge of Hall, and also that the purchase of lumber by the
defendant on said execution was for said Bailey's benefit.

For the purpose of showing that the assent of Bailey to the judg-
ment was fraudulent, and that he knew it was false, the plaintiff
offered to prove that Bailey said, a short time before the suit was
commenced, that he did not owe said Hall any thing for the rent of
said saw-mill. The court rejected the evidence, and the plaintiff

excepted.    Charles Bailey was present during the trial, but was not called as a witness by either party.

The court charged the jury among other things as follows :

1. That the assignment was void as to creditors, by reason of the conditions in the same as to the trustees: to wit, "That Clark P. True and George C. Williams agreed to execute said trusts, being responsible only each for his own actual receipts or willful defaults ;" and could only bind such creditors as knowingly gave their assent thereto.

2. That the taking of other lumber pursuant to Bailey's contracts, and the purchase of other lumber by the plaintiff after the date of the assignment upon the parol agreements between the plaintiff and Bailey, and commingling the same knowingly with the lumber described in the assignment, as under the circumstances detailed, would operate as a fraud, and would not bind the creditors of Bailey ; and if the jury believed the plaintiff intermingled of his own free will his own property, or property in which he had a pecuniary interest, with the property described in the assignment, and without the ability to identify it, then he must suffer the loss.    And if the jury believed that the intent or the effect of the contract or arrangement between Bailey, and True the plaintiff, was to delay, hinder and defraud the creditors of Bailey, then they would be justified in finding for the defendant.

3. That the sale on the execution, as made, conveyed the entire property to the defendant.    To these instructions the plaintiff excepted.

The jury having returned their verdict for the defendant, the plaintiff moved for a new trial, &c. ; and the questions arising on the case were reserved and assigned to the law term.

COPY OF ASSIGNMENT.

Know all men by these presents, that I, Charles Bailey, of Canaan, in the State of Vermont, for myself, also for John Bailey, of Columbia, in the State of New-Hampshire, as his agent, also for the partnership firm of Charles Bailey and Benjamin Roberts, Jr., in consideration of one dollar, to me paid by Clark P. True and George C. Williams, the former of Stratford, and the latter of Lancaster, N. H., and of the trusts herein expressed, do grant and assign to said True and Williams all the sawn lumber, or proceeds of sales of sawn lumber by Knights, Poole & Co., also all the sugarbox shooks which are in Portland, in the State of Maine ; all the sawn lumber at Northumberland, N. H., or Guildhall, Vt., including the sugar-box shooks, all the aforesaid property belonging to said Roberts and Bailey ; also all the logs in the Connecticut and Ammonoosuc rivers and on the banks thereof, marked R. B., and belonging to said Roberts and Bailey; also the following described property belonging to John Bailey: namely, one covered passenger wagon, and one covered passenger sleigh, and one nine passenger coach, now at Lancaster, N. H.; also four team horses, four team harnesses, and a four horse wagon, and one four horse sled, now at Northumberland, N. H. ; also all the sawn lumber now lying on the line

of the Atlantic and St. Lawrence Railroad, between North Stratford and Northumberland depots; all the sawn lumber now lying at the landing near Josiah H. Prichard's, in Stewartstown, N. H.; also all the pine and spruce timber marked J. B., lying between McIndoe's Falls and the head of Hall stream, so called; also the following described property, belonging to Charles Bailey: namely, all the spruce and pine logs in the Connecticut river and on the banks thereof, between McIndoe's Falls and the head of Hall stream, so called; to have and to hold to said True and Williams and the survivor of them, and his heirs, in trust, to transport, manufacture, sell and dispose of said property to the best advantage, and convert the same into money, and after deducting from the proceeds of said property the expenses incurred by said trustees in transacting the aforesaid business, and a reasonable compensation for their services, to divide and pay the said proceeds among the following mutual creditors, in equal proportions to their respective claims, as follows: To C. P. True & Co., all his claims against John Bailey, to be paid from out the proceeds of the aforesaid property of John Bailey; also all their claim against Charles Bailey from the property of said Charles Bailey; all of Richey & Danforth's claim against Charles Bailey, to be paid from aforesaid property of Charles Bailey; and all the claim or demand of Richey & Danforth against Bailey & Roberts, to be paid from said property of Bailey & Roberts, or of said Charles Bailey, if any of said Charles Bailey's property shall remain after paying the private debts mentioned against said Charles Bailey; also the White Mountain Bank, a corporation at Lancaster, N. H., two promissory notes now held by said bank, one for $1,016, dated May 1, 1854, payable to the order of James Hall, in nine months from date, signed by Benjamin Roberts, Jr., and Charles Bailey, and indorsed by said Hall; and another for $1,000, signed by James L. Merrill, dated November 3, 1854, payable to order of Benjamin Roberts, Jr., and Charles Bailey, and by them indorsed; said notes to be paid out of the proceeds of the said property of Bailey & Roberts, or of said Charles Bailey, if any of said Charles Bailey's property shall remain after paying the private debts mentioned against said Charles Bailey; also a note of $100 and interest, signed by Charles Bailey, and payable to Mrs. Jane Hall, to be paid from the proceeds of the property of said Charles Bailey; also the balance due from Bailey & Roberts to William Morse, and the balance due from Bailey & Roberts to H. B. Darling, and the balance due to Moses Rogers, to be paid from the said property of Bailey & Roberts; also the balance due said Morse, and the balance due said Darling from Charles Bailey, to be paid from said property of Charles Bailey; also a note signed by Charles Bailey and payable to Charles B. Allen, for $350, to be paid from the property of said Charles Bailey; also H. A. Fletcher and Burns & Fletcher's demands against John and Charles Bailey; and any balance due to any of the workmen and teamsters, who have been employed for Charles Bailey or for Bailey & Roberts; and for any balance that may be due to William H. Poole, Esq., and William Heywood, Esq., from Charles Bailey or Bailey & Roberts; also

the indebtedness of Bailey & Roberts to James A. Smith; each of the aforesaid claims or demands to be paid from the proceeds of the property peculiar and liable to the payment of each according to the ownership thereof, the balance, after paying the debts as aforesaid, to revert to the respective owners as aforesaid.

Clark P. True and George C. Williams agree to execute said trust, being responsible only each for his own actual receipts or willful defaults.

Witness our hands and seals, this twenty-ninth day of January, A. D. 1855.

> JOHN BAILEY,
> By CHARLES BAILEY,
> CHARLES BAILEY,
> ROBERTS & BAILEY,
> C. P. TRUE,
> GEO. C. WILLIAMS.

Signed and delivered in presence of
    CHESTER SCHOFF.

### COPY OF OFFICER'S RETURN.

I took, by virtue of this execution, a quantity of manufactured lumber, consisting of boards, planks, joists, lathes and shingles, and on the same day I advertised at the store of George Hubbard, in Guildhall, that on the 15th day of May, then next, at one o'clock P. M., I would sell the same at public auction, to the highest bidder, to satisfy said execution and the legal fees thereon, at the store aforesaid, and on said 15th day of May, at the request of the debtor and the creditor within named, I adjourned the said sale until the 18th day of May, A. D. 1858, at the hour of 10 o'clock A. M., and on said 18th day of May, the debtor within named having failed to redeem said property by otherwise satisfying this execution, I sold all of the interest which Charles Bailey, the debtor within named, had in and to the following described lots of lumber, to A. J. Congdon, &c.

*Bartlett* (of Vt.), *Bingham, Heywood,* and *Williams,* for the plaintiff.

*Burns & Fletcher,* for the defendant.

SARGENT, J.  This verdict must be set aside. The instructions that if the jury believed the intent or the effect of the contract or arrangement between Bailey and True, the plaintiff, was to delay, hinder or defraud the creditors of Bailey, they would be justified in finding for the defendant, were evidently wrong. If the intent of both parties to the assignment was to hinder, delay or defraud Bailey's creditors, or if such was Bailey's intent, and that fact was known to True at the time, the assignment would be void as to such creditors. *Cadagan* v. *Kennett,* Cowp. 434; *Seavey* v. *Dearborn,* 19 N. H. 351; *Blodgett* v. *Webster,* 24 N. H. 92; *Robinson* v. *Holt,* 39 N. H. 557.

But if the assignment was made *bonâ fide* and with no such fraud-

ulent intent, it would be entirely immaterial what its effect might be. The effect of all assignments, at common law or under our statute may be, and perhaps generally is, to delay and hinder the creditors somewhat in the collection of their debts. And this effect might follow from an assignment made legally and *bonâ fide*, as often as in any other case, but such effect can have no tendency to make the assignment void as against creditors. The intent of the parties in the transaction was material, and concerning that matter the jury were properly instructed; but in regard to the effect of the contract or arrangement the instructions were erroneous.

The instructions to the jury that the assignment was void, by reason of the conditions in the same on the part of the trustees, were correct, and the jury might properly have been instructed that it was also void because it did not purport to convey all Bailey's property for the equal benefit of all his creditors; nor was there any proof that such was the fact; and also because it was not sworn to, as the statute requires. Rev. Stat., ch. 134; Comp. Stat. 297; *Fellows* v. *Greenleaf*, 43 N. H. 421, and *Brown* v. *Warren*, 43 N. H. 430.

The plaintiff's counsel takes the position that the property sold, or attempted to be, was not sufficiently described, and that therefore nothing passed by the sale. The officer, when inquired of as to what Bailey's interest in the property was, replied that he did not know. The rule, as laid down by *Bell*, J., in *Jones* v. *Railroad*, 32 N. H. 551, is believed to be reasonable, and clearly deducible from the authorities, and is as follows: "The principle we think is clear, that the officer who would make a sale of personal property of a debtor, on execution, must have it so far in his possession and control that he can designate and exhibit the articles of property which he proposes to sell, when they are of a visible character. And on similar reasons, when the property does not admit of actual possession, the officer must obtain such knowledge of the state of the property that he may be able to describe to the purchaser precisely and definitely what he offers for sale." And this rule is stated (on page 553) to be founded on considerations of public policy, and of justice to the debtor, since the effect of any loose practice in this respect must be to destroy all competition at the sale.

Now the officer in this case could show the lumber to those who wished to purchase, point it out particularly, and had it in his control. But he only offered for sale Bailey's interest in it, and not the whole lumber. True is present and asserts his right to it, claims it all, and forbids the sale. Still the creditor, Rogers, supposing Bailey might have some title, orders the officer to sell his right, without knowing himself or being able to inform the officer what that right was. Now Rogers, the creditor, does not complain of any fraud upon him in the transaction; neither does Bailey, the debtor; and we think, under all the circumstances, that True can not, as he was there and asserted his claim, and gave due notice of his title; and certainly Congdon can not complain that he was defrauded, for if he chose to purchase a right concerning which he

knew nothing, and about which the officer who sold, or the creditor, could give him no information.    And after he was notified by True that he owned the whole lumber, of course he had no one to blame but himself, even if his title should prove to be of little worth.    Another reason why True can not complain is, that only Bailey's interest was sold, which, as we shall see, makes the sale of very little consequence to him.

In this State such a right as Bailey's may be attached upon a writ of *mesne* process, whether that right be that of tenant in common or a reversioner, having an equity after some lien or pledge has been satisfied, though in the latter case the amount of the lien or pledge must first be paid; Rev. Stat., ch. 184, secs. 15, 16; Comp. Stat. 471; or the same right might be levied upon and sold on execution, either by paying the amount of the lien, or it may be sold as this was without such payment, when the purchaser acquires only the debtor's right to the property.    Rev. Stat., ch. 194, secs. 4, 6; Comp. Stat. 498.    It is said by the plaintiff that there is no such statute provision in the State of Vermont, by which any such equity of redemption or reversionary right in personal property can be taken and sold on execution.    This position is not denied by the defendant's counsel, and it may be safely assumed that, had such provisions existed in the statutes of that State, the defendant's counsel, from their location and almost necessary acquaintance with the laws and legal practice of that State, would have called our attention to them.    It would seem, from the decision in *Smith* v. *Niles*, 20 Vt. 315, that up to 1848 they had no such statute provision in Vermont as ours, authorizing a sale of an equity of redemption in personal chattels, or a reversionary interest.    If the plaintiff is correct in his position in relation to the laws of Vermont, then that would be decisive of the case, provided the jury should find that Bailey's was a reversionary right only; a right to redeem the lumber by paying True's lien or pledge upon the same.    But if the jury should find that True and Bailey were tenants in common of this lumber, then, so far as our attention has been called to the laws of Vermont, the sale of Bailey's interest may be well enough; so that we see the third instructions to the jury, namely, that the sale on the execution, as made, conveyed the entire property to the defendant, were erroneous; for, as we have seen, it may have conveyed nothing.    But those instructions were also erroneous in another respect.    Rogers, the creditor, testified that he instructed the officer to sell not the whole lumber, but Bailey's interest in it.    The officer testifies that he sold only Bailey's interest in the lumber; and his return, which is the proper evidence of what he did, shows that he sold Bailey's interest in the lumber only, and not the whole lumber.

Bailey's interest being all that the defendant bought, that is all he can hold; so that, if the sale was valid, the instructions that it conveyed all the title in the lumber to the defendant were erroneous, as was also the ruling to which the plaintiff excepted, by which the evidence was admitted, to show that the contract and course of dealing between the plaintiff and Bailey was fraudulent

as to *bonâ fide* creditors electing to avoid the same. Assuming that the sale on the execution was legal, Congdon could not have held the rights of Bailey's creditors, but only the rights of Bailey. It makes no difference, therefore, what Bailey's creditors might have held if they had chosen to do so, or what questions might have arisen as to the possession or the intermingling of the property, or of fraud as against such creditors. It is enough to say, that whatever the creditors might have done, or whatever they intended to do when the attachments were made, in the end they concluded to sell, not what they as creditors could have taken and held, if they had chosen — not the right which, as creditors, they might have acquired by an attachment of the whole property as Bailey's, but they simply sold Bailey's right in the property; and the purchaser of that right stands not in the place of Bailey's creditors, but in the place of Bailey himself. Congdon, therefore, stands in the place of Bailey, having his rights and his only, and not the rights which Bailey's creditors might have had to it. This view is clearly sustained in *Flanders* v. *Jones*, 30 N. H. 154; in *Brewer* v. *Hyndman*, there cited; in *Bean* v. *Brackett*, 34 N. H. 122; and in *Griffith* v. *Fowler*, 18 Vt. 390. Hence the balance of the second instructions given to the jury, aside from what we have heretofore considered, were either irrelevant or erroneous.

It therefore becomes unimportant to consider the point, whether Bailey's admissions, that he did not owe Hall any thing, were admissible in evidence or not. It would make no difference if the judgment in favor of Hall were proved to be fraudulent and collusive, so long as the other judgment in favor of Rogers remains unimpeached; because all the lumber appears by the officer's return to have been sold on both executions, and the sale could not be impeached so long as one of the claims on which it was sold is admitted to be honest, and the judgment properly recovered, by proving that the other was fraudulent. Nor do we see that it would make any great difference with True if both judgments were fraudulent, since the rights acquired under that sale, even if the sale was valid, would only be the right to stand in Bailey's place, to confirm his contracts, and hold the property just as Bailey held it.

The important question is, what were the relations of True and Bailey in connection with this property before the sale? How did they hold this property as between themselves? For it is not necessary, in this view of the case, to consider what rights Bailey's creditors might have had, if they had availed themselves of those rights; whether True's possession was sufficient, as against Bailey's creditors, or whether he had so intermingled his property with that of Bailey, that such creditors could hold the whole of it as Bailey's; or whether, by the contracts between them, True acquired any such lien upon the property as would be valid as against such creditors. The only question is, how did they stand as between themselves, and how was the property held as between them, leaving every body else out of the account?

The evidence tends to show that after the assignment from Bailey to True, many lots of lumber were bought by True, or by Bailey

for him, which were paid for by True, or were bought upon his credit, and that all this lumber went in with Bailey's, or with that which had at first been assigned to True, and that the same was all kept and manufactured together. And it seems that the ground taken at the trial was, that these lots of lumber, thus bought, were True's, and that, as the assignment was void, and True could hold nothing under it, that property all remained Bailey's, just as though no assignment had been made; and that True had suffered his lumber, thus purchased and paid for by him, to be so intermingled with Bailey's, which he had attempted to assign to True, but failed in the attempt, that the same could all be held as Bailey's lumber, by his creditors.

Now, supposing these to be the facts, still, as between True and Bailey, they would be tenants in common of the lumber, each owning a distinct proportion, to be ascertained by and between themselves. If the jury should find that True and Bailey were tenants in common—and the defendant claims in his argument that they were so—then by the sale, if it was valid, Congdon, acquiring Bailey's interest, became a tenant in common with True, and the question to be settled would be, whether Congdon had so used or conducted with this lumber as to make himself liable in this action, to his co-tenant? and if so, to find the amount, or proportion of lumber owned by True, for which he would be entitled to damages.

But if it should be held as a matter of law, or found as a matter of fact, on a new trial, that the sale was not legal, and passed no property, then, if True and Bailey were tenants in common before, they would of course remain tenants in common still, and still own the property as before, and they might sue Congdon for taking away this lumber. But as this is an action in form *ex delicto*, the defendant can not take advantage of the non-joinder of Bailey as plaintiff, except by plea in abatement, which he has not done, and which it is now too late to do. For although the fact is otherwise in actions in form *ex contractu;* 1 Ch. Pl. 13; *Pitkin* v. *Roby*, 43 N. H. 138; yet, "in actions in form *ex delicto*, and which are not for the breach of a contract, if a party who ought to join be omitted, the objection can only be taken by plea in abatement, or by way of apportionment of the damages on the trial; and the defendant can not, as in actions in form *ex contractu*, give in evidence the non-joinder as a ground of nonsuit under the plea of the general issue; or demur; or move in arrest of judgment; or support a writ of error; although it appear, upon the face of the declaration, or other pleading of the plaintiff, that there is another party who ought to have joined." 1 Ch. Pl. 66; *Cabell* v. *Vaughan*, 1 Saund. 291, f, g and h; *Child* v. *Sands*, Salk. 32; *Brown* v. *Hedges*, Salk. 290; *Addison* v. *Oberend*, 6 T. R. 766; *Wilbraham* v. *Snow*, 2 Saund. 47, g; *Thompson* v. *Haskins*, 11 Mass. 419; *Bradish* v. *Shenk*, 8 Johns. 151; *Wilson* v. *Gamble*, 9 N. H. 74. This rule holds true of all actions of *tort* brought by one only of two or more joint tenants, parceners, tenants in common, partners, executors, assignees in bankruptcy, and others who regularly ought to join as plaintiffs. *Cabell* v. *Vaughan*, *supra*, and cases cited.

But if True, although he could not hold for creditors under the assignment, it being void, might hold such property as actually came into his possession under the assignment, so long as he retained such possession, as security for his own debt and expenses, by way of pledge, and after he had taken actual possession of all the lumber and timber about the mill, and marked some of it, the arrangement between him and Bailey was, that Bailey should act merely as his servant and agent, and hold the lumber as such, for True; so that, as between themselves, his possession was True's possession; then Bailey's interest in that lumber would only be a reversionary interest; a right to have whatever might remain after True's lien was extinguished; and then True could, in the first instance, if the sale was void, recover for the whole lumber assigned, together with all which he had himself added afterward.

If a jury should find that such were the facts, or that, by the contract of the last of March or first of April, 1855, between Bailey and True and the Danforths, all the lumber originally assigned, which had come into True's hands, or into Bailey's as his servant, and all that had subsequently been put in by True or Bailey, and all that should be put in, should, and did by force of that contract and agreement, as between him and Bailey, become True's property, and Bailey became his servant, to keep possession and take charge of and manufacture the same for True, and that True was thus in the legal possession and control of the lumber, with a lien upon it for all his debts and liabilities, and for all his expenses and advancements on account of the same; then, Bailey, having only a reversionary interest, True could recover for the whole lumber taken by the defendant, and, after deducting all his claims, he would hold the residue for Bailey. It would seem from the evidence, as reported on the trial, that a jury might well find the latter to be the true position of the property, and of the parties, True and Bailey, as between themselves.

So, then, if it should be found upon another trial that the defendant took nothing by his purchase, the only question would be as to the amount of damages the plaintiff should recover. Because, if the jury should find that True and Bailey were tenants in common, then they remain so still, if nothing passed by the sale; and though they should properly have both joined in this action of trespass, yet the non-joinder of Bailey as plaintiff not having been pleaded in abatement, can not now be taken advantage of in any other way than by an apportionment of the damages, on trial. But if the jury should find that, as between Bailey and True, the latter had a lien upon this property, and the legal possession, and Bailey only a reversionary interest, then, if nothing passed by the sale, the plaintiff may recover the full value of all this lumber, of this defendant, and he and Bailey will adjust their matters afterward.

But should it be found on a new trial that the sale of the lumber was valid, so that Congdon, having Bailey's interest, stands in his place, then, in case it be found that Bailey and True were tenants in common, Congdon, by this purchase, would become a tenant in common with True; and then the question would be, whether

Congdon had so used or conducted with this lumber as to make himself liable in this action to his co-tenant? But if it be found that True had a lien upon all this lumber, as against Bailey, and Bailey only a reversionary interest—his possession being as the agent and servant of True—then Congdon stands in the same position, and when he took the property as his own, and appropriated it all to himself, he made himself liable to True for the whole amount of the property, in the first instance, as damages, if the whole would be necessary to meet True's claims; but if not, then, as Congdon has the same reversionary interest that Bailey had, to avoid circuity of action, True would only recover the amount of such claims as were covered by his lien upon the property.

*New trial granted.*