## BRYANT *v.* WHITCHER & A.

A sheriff's sale of personal property of A, upon an execution against B, vests no title in the purchaser.

The English law in relation to sales in market overt has never been adopted in New Hampshire.

TROVER, by John S. Bryant against Whitcher & Weeks, for hay. The hay once belonged to one Holmes. The plaintiff's title was that of a purchaser at a sheriff's sale on an execution in favor of himself against Holmes. The defendants' title was that of purchasers from Holmes before the attachment of the hay in the plaintiff's suit against Holmes. The court reserved the question whether it would be a defence to this action that the defendants' acquired a good title to the hay by purchase from Holmes before said attachment, if, before they converted it, they were informed and believed that the hay had been sold by the sheriff on said execution. If this would be a defence, the

case was to be discharged : if it would not be a defence, judgment was to be rendered for the plaintiff for $28, and interest from Jan. 1, 1871.

*Bryant, pro se.*

*Putnam,* for the defendants.

BELLOWS, C. J.  The question here raised is, whether a sale by a sheriff, upon execution, will vest the title to the goods in the purchaser, as against a third person who is the real owner.

It is claimed that the title would so vest, upon the ground that such sale by a sheriff has the same effect to change the property as a sale in market overt, under the English law.

We think, however, that this doctrine has never been adopted in this State, and that the purchaser acquires no greater title than the sheriff has a right to sell; and that is simply the right of the debtor. It is clear and well established here, that a sheriff is liable, in trespass or trover, to a third person who owns the goods; and, as he is directed by his precept to sell only the goods of the debtor, it follows, of course, that he has no right to sell the goods of another.    The law in respect to sales in market overt has never been adopted in this country.  It is of Saxon origin, adopted at a time when much property passed by theft, plunder, and sale; and it was designed to discountenance all private sales of goods in value exceeding twenty pence, and to cause them to be made in open market, in the presence of credible witnesses, and under such stringent rules and regulations as were calculated to afford the means of detecting dishonest practices.    If the sale was made in such market overt, and in accordance with these rules and regulations, the title was held to pass, even against the true owner, unless the goods were sold by the thief, and the owner used due diligence to convict him.     Market overt in the country was only held on the special days provided for particular towns by charter or prescription; but in London, every day, except Sunday, was market-day.    In the country, the market-place, or spot of ground set apart by custom for the sale of particular goods, was the only market overt; but in London, every shop in which goods were exposed publicly for sale is market overt, for such things only as the owner professes to sell.    So the sale must have been made wholly within the market, and at the usual hours, between sun-rising and sun-setting, and in an open place where people passing may see what is done and seize the goods.    The provisions regulating these sales are quite numerous, and manifestly designed to afford facilities for the detection of larcenies and other dishonest practices.    2 Black. Com. 448–9; Dane Abr., ch. 45, arts. 2 and 3, and cases cited.

Provisions of this kind were not called for by the condition of things in this country, and therefore were not generally adopted.

Chancellor KENT, in the second volume of his commentaries *325, says it is generally understood that the English custom of markets overt does not apply to this country, and that " it has been frequently held

in this country that the English law of market overt had not been adopted; and consequently, as a general rule, the title of the true owner cannot be lost without his own free consent." In England, even where the doctrine of market overt is recognized, it is not applied to sales at auction by sheriffs ; on the contrary, in *Farrant* v. *Thompson*, 5 B. & Ald. 826, where a tenant of a mill severed the machinery from the mill, and afterwards, while he was removing it, a sheriff seized it upon an execution against him, and sold it, the court held that the sheriff wrongfully took the goods of the plaintiff instead of those of the tenant, and that he could acquire no title by his wrongful act, and could therefore convey no title to the purchaser,—the counsel for the defendant having urged that the sale by the sheriff was equivalent to a sale in market overt. This decision was in 1822. In *Cooper* (assignees of *William Johns*) v. *Chitty*, 1 Burr. 32, decided in 1756, the defendants were sheriffs of London, who had sold, on an execution against Johns, goods which had passed to the assignees. The court held that this was a conversion, and that the plaintiffs could maintain trover.

It was admitted by the defendants that the vendee under the sheriff's sale acquired no title, but was liable to an action ; and this was referred to by Lord Mansfield, in the opinion of the court, with apparent acquiescence ; from which it is to be inferred that it was not then understood that a sheriff's sale of property not the debtor's would change the title. So in *Shaw* v. *Tunbridge*, 2 Wm. Black. 1064, an injunction to stay the sale of goods claimed by the plaintiff, on process against a third person, was refused on the ground that the plaintiff would have a remedy against the sheriff, and also against his vendee.

In 1 Ch. Pl., 10th Am. ed., 80, it is laid down that, in general, where goods are sold under the authority of the sheriff, in the exercise of his official duty, he is the proper party to be made defendant in an action by the owner for selling his goods, and a *bona fide* purchaser, without notice at the sale, cannot be sued ; but the purchaser of the goods of B, illegally taken by the sheriff under an execution against C, is liable to be held in trover by B ; because, in that case, the seizure and sale are wholly unauthorized by the writ.

The distinction seems to be between the taking of the goods legally of the debtor, but with some irregularity in the process, and the illegal taking of another's goods, for which no authority is given : in the latter case the sheriff's vendee would be liable, and in the other he would not be. This distinction is recognized in 1 Ch. Pl. 171, and also in the cases cited on page 80. In *Cole* v. *Davies* (assignees of March, a bankrupt), 1 Ld. Raym. 724, it was laid down by Holt, C. J., that if a sheriff seizes the goods of A, after an act of bankruptcy, and sells them, and a commission of bankruptcy is granted, and the goods assigned by the commissioners, the assignees may maintain trover against the vendee of the goods ; but no action will lie against the sheriff because he obeyed the writ. From this review of English cases, it would seem to be quite clear that a sale by a sheriff is not, in England, equivalent to a sale in market overt.

In Massachusetts, it is held that the English law of market overt has not been adopted here—*Dame* v. *Baldwin*, 8 Mass. 518 ; and so it is in New York—*Wheelwright* v. *Depeyster*, 1 Johns. 479—where Chancellor KENT says that he knows of no usage or regulation in that State, of the character of market overt, which controls or interferes with the application of the common law doctrines.　So, in *Hoffman* v. *Carow*, 22 Wend. 285, it is said, by Senator EDWARDS, that the English law of market overt has never been adopted in this country ; but, where the question has been presented to American judicial tribunals, it has always been repudiated, and the maxim, that no one can confer upon another a greater right than he has himself, recognized.　In *Mowrey* v. *Walsh*, 8 Cow. 241, it is held that there are no markets overt in New York.　So in *Easton* v. *Worthington*, 5 S. & R. 130.　So it is held in Maryland—*Browning* v. *Magill*, 2 Harr. & Johns. 308.　In Massachusetts, the precise question here raised is settled in several adjudged cases, namely, that a purchaser at a sheriff's sale acquires no title to property not belonging to the debtor.　*Buffum* v. *Deane*, 8 Cush. 41,— citing *Shearick* v. *Huber*, 6 Binney 2, *Champney* v. *Smith*, 15 Gray 512, and *Johnson* v. *Babcock*, 8 Allen 583.　So, in Vermont, it is held, on careful consideration, that the purchaser at a sheriff's sale acquires no greater title than that of the execution debtor.　*Griffith* v. *Fowler*, 18 Vt. 390.　So is *Sanborn* v. *Kittredge*, 20 Vt. 640, and *Austin* v. *Tilden*, 14 Vt. 327.　WILLIAMS, C. J., says it cannot be denied that the authorities in England and New York are to the same effect.

In *Ventress* v. *Smith*, 10 Peters (U. S.) 176, the court say that " it is a general rule of law that a sale, by a person who has no right to sell, is not valid against the rightful owner ;" and that the court is not aware that the Saxon institution of markets overt, which controls and interferes with the application of the common law, has ever been recognized in any of the United States, or received any judicial sanction ; and the court hold the maxim of the civil law, that no one can confer upon another a greater right than he has himself, to be the plain dictate of common sense.　So, in Maine, it is settled that a purchaser of goods at a sheriff's sale acquires no right against the true owner, not being the execution debtor.　*Symonds* v. *Hall*, 37 Maine 358, and cases cited.　Such is the doctrine in South Carolina, *Stone* v. *Elberly*, 1 Bay 317,—and in North Carolina, where it is held that only such estate as the debtor has, passes by a sale on execution—*Homesly* v. *Hogue*, 4 Jones (Law) 481 ;—also, in Tennessee, *Arendale* v. *Morgan*, 5 Sneed 703 ; and in California, *Boggs* v. *Fowler*, 16 Cal. 559.

It is entirely clear, then, that we have no markets overt in this State, and it is equally clear that a sale out of a fair or market overt does not divest the title of the real owner.　Com. Dig., tit. Market E., and *Ventress* v. *Smith*, 10 Peters (U. S.) 176.

In New Hampshire, the views we have announced are sustained by that class of cases where the sheriff seizes and sells the whole of a chattel on an execution against one of two or more tenants in common, in which case the purchaser holds only the share of the execu-

tion debtor; whereas, if this was equivalent to a sale in market overt, he would take the whole title; but it is clear that he would take only the share of the debtor. *Pettingill* v. *Bartlett*, 1 N. H. 87, where it was held that trespass would not lie against the officer, because only the debtor's share passed to the purchaser. This case is overruled, so far as it decides that an action would not lie against the sheriff—*Moulton* v. *Robinson*, 27 N. H. 566; but this case assumes, also, that the title of the debtor, only, passed to the purchaser. *Warren* v. *Cochran*, 30 N. H. 379.

Upon these views, we think that a valid purchase by the defendants, of Holmes, before the attachment, would be a good defence to this action, even although, before taking it from the plaintiff, they knew of the sheriff's sale to the plaintiff. Of course, this assumes that the sale was complete and the title vested in the defendants before the attachment, as we understand the case.

*Case discharged.*